STATE of Missouri, Plaintiff–Respondent,

v.

Steven A. MITCHELL, Defendant–Appellant.

Steven A. MITCHELL, Movant–Appellant,

v.

STATE of Missouri, Respondent.

Nos. 18833, 19652.

Missouri Court of Appeals, Southern District, Division Two.

April 21, 1995.

Judith C. LaRose, Office of the State Public Defender, Columbia, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Michelle A. Freund, Asst. Atty. Gen., Jefferson City, for respondent.

GARRISON, Presiding Judge.

Appellant (Defendant) was convicted by a jury of two counts of the Class B felony of distributing cocaine, § 195.211,[1] and received two consecutive five-year sentences. Following his conviction, his *pro se* motion pursuant to Rule 29.15, alleging ineffective assistance of counsel, was denied without an evidentiary hearing.[2] His direct appeal (Case No. 18833) and his appeal from the denial of his Rule 29.15 motion (Case No. 19652) have been duly consolidated.

The offenses for which Defendant was convicted occurred on January 17, 1991 and January 21, 1991 when he sold crack cocaine to Ginger Robertson, an undercover police officer. Defendant admitted selling the cocaine but contends that he was entrapped. Viewed in the light most favorable to the verdicts of guilty, the record supports the following:

Officer Robertson received a communication from an informant (Walker) that Defendant was selling drugs, and he offered to assist her in making a buy. Robertson and Walker went to Defendant's residence on January 17, 1991 and requested that he sell them crack cocaine. According to Officer Robertson, Defendant told her that an "eight-ball"[3] would cost $300, which the officer knew to be the going price for that quantity. After the officer gave him $300, Defendant left in order to obtain the cocaine. He returned thirty-five minutes later, at which time the drugs were delivered.

On January 21, 1991, Officer Robertson again asked Defendant to sell her cocaine. This time she requested two eight-balls but Defendant said he was uneasy because some of his friends had questioned whether she was a police officer. She told him that she was not and that if he didn't trust her she could go elsewhere to buy the cocaine. At that point, Defendant told her he would get the two eight-balls for her and quoted a price of $600, which she paid. Officer Robertson and Walker were told to meet Defendant at his house. When they did so, Defendant produced some crack cocaine and proceeded to smoke it, offering to share it with both Officer Robertson and Walker. Later, Robertson and Walker were told to meet Defendant at a park where he delivered the two eight-balls to the officer.

1. All references to statutes are to RSMo 1994, unless otherwise noted, and all references to rules are to Missouri Rules of Court, V.A.M.R.

2. His appointed counsel informed the court that he was not aware of grounds other than those contained in the *pro se* motion. The filing of an amended motion was waived.

3. An eight-ball is 3.5 grams of cocaine.

## Motion To Remand

■ Officer Robertson carried a concealed tape recorder during each of the transactions. The tape recordings, which were apparently partially inaudible, were introduced in evidence without objection from Defendant but were not played during the trial. The jury was permitted to hear the tapes during their deliberations. The tapes were apparently inadvertently destroyed after the trial without transcripts having been made. Defendant has filed a Motion To Remand For New Trial, based on the destruction of the tapes, which has been taken with the case.

The motion is premised on the necessity of the tapes for appellate review of Defendant's points of alleged error, i.e., permitting the jury to hear the tapes during their deliberations without the tapes having been played during the trial or in the presence of the trial judge; and denial of Defendant's motion for judgment of acquittal at the close of all the evidence because he was allegedly entrapped as a matter of law.

*State v. Dunn*, 817 S.W.2d 241 (Mo. banc 1991), also involved the destruction of an audio tape of a drug sale. Like the instant case, the tape had been admitted into evidence without objection, had been heard by the jury, there was no transcript of the tape, and the defendant contended that he was unable to obtain a full and fair appellate review. The court noted that the defendant had not asked for review of any point to which the contents of the tape were relevant. *Id.* at 244. The court said, with reference to defendant's contention that he was disadvantaged because of the unavailability of the tape:

> [H]is mere speculation that the tape might be of assistance to him on appeal provides no basis for meaningful appellate review. [Citation omitted.] It is appellant's responsibility to prepare a complete record on appeal. Assuming, *arguendo*, that the tape was relevant, appellant is not entitled to a new trial unless he attempts otherwise to obtain the substance of material omitted from the record by consulting the appropriate trial participants and then estab-

lishes prejudice as a result of the inability to present a complete record.

*Id.* at 244.

In the instant case, Defendant acknowledged in his testimony that he had heard the tapes, yet he makes no effort in his motion or on this appeal to demonstrate that the tapes contained information relevant to appellate review of his points relied on. For instance, in his first point he does not contend that their contents prejudiced him when heard by the jury. In his second point, Defendant contends that he was entitled to a judgment of acquittal because the evidence allegedly showed entrapment as a matter of law, but he fails to allege that the tapes would have supported his contention or that they contained matters relevant to that point which were not otherwise included in the record. We also note that Defendant made no effort to have what he might consider to be the relevant contents of the tapes reconstructed through stipulation. Under these circumstances, we are unable to conclude that the destruction of the tapes should require a reversal. Defendant's motion is, therefore, denied.

### Case No. 18833

In the first assignment of error on his direct appeal, Defendant contends that the trial court erred in permitting the jury to listen to the tape recordings during their deliberations because they had not been played in open court and the trial court had not previously listened to the tapes. He acknowledges that this was neither objected to by his trial counsel nor raised in his motion for new trial, and as a result he requests a review for plain error pursuant to Rule 30.20.

■ To obtain plain error relief, Defendant must go beyond a mere showing of demonstrable prejudice to show manifest prejudice affecting his substantial rights. *State v. Parker*, 856 S.W.2d 331, 332 (Mo. banc 1993). He must show that the error affected his rights so substantially that a miscarriage of justice or manifest injustice will occur if the error is left uncorrected. *Id.* at 332–333. Defendant has the burden of demonstrating entitlement to plain error re-

lief, *State v. Groves*, 646 S.W.2d 82, 83 (Mo. banc 1983), which is a much greater burden than demonstrating prejudicial error. *State v. Mallory*, 851 S.W.2d 46, 48 (Mo.App.S.D. 1993).

■ Defendant concedes that the decision to allow exhibits to be taken to the jury room is a matter for the trial court's discretion. *State v. Jennings*, 815 S.W.2d 434, 440 (Mo.App.E.D.1991). To constitute an abuse of that discretion, the decision must be untenable, clearly against reason, and work an injustice. *Id.* Where exhibits are admitted into evidence in their entirety without objection, it has been held that it is not improper for them to be made available to the jury. *See State v. Hornbuckle*, 769 S.W.2d 89, 99 (Mo. banc 1989).

■ It is true that generally exhibits which are testimonial in nature cannot be given to the jury during its deliberation. *See State v. Evans*, 639 S.W.2d 792, 795 (Mo. banc 1982); *State v. Jennings*, 815 S.W.2d at 440. Assuming, for the sake of this point, that these tapes were of that type, they were sent to the jury without objection being voiced by Defendant and he does not now contend that they contained any information prejudicial to him.

Defendant relies primarily on the dissent in *Evans*. In that case, defendant's confession was described by a police officer in his testimony, but a tape recording of the confession, although introduced in evidence over defendant's objection, was not played in court. During deliberations, the jury was permitted to hear the tape over defendant's objections that it had not been played in court and that only excerpts of the tape had been described in the witness's testimony. The Missouri Supreme Court held that there was no error, noting that the tape neither unduly emphasized facts which were already in evidence nor revealed facts not in evidence.[4]

■ In the instant case, Defendant, who has the burden of establishing plain error, does not contend that the tapes contained facts which were not otherwise in evidence, or that they unduly emphasized evidence

which had been admitted. This being the case, we are unable to conclude that *Evans* requires a reversal here.

■ While mere prejudice alone is insufficient for plain error relief, it is at least a necessary ingredient. In the instant case, Defendant, although obviously having heard the tapes, has not argued that the contents were prejudicial to him and has not demonstrated how manifest injustice or a miscarriage of justice inexorably resulted from their being heard by the jury. Under the circumstances of this case, therefore, we are unable to conclude that Defendant is entitled to plain error relief. His first point is denied.

In his second point, Defendant contends that the trial court should have sustained his motion for judgment of acquittal at the close of all the evidence because the evidence showed that he was entrapped as a matter of law. The defense of entrapment has been codified in Missouri. Section 562.066, RSMo 1986, provides, in pertinent part:

1. The commission of acts which would otherwise constitute an offense is not criminal if the actor engaged in the prescribed conduct because he was entrapped by a law enforcement officer or a person acting in cooperation with such an officer.

2. An **"entrapment"** is perpetrated if a law enforcement officer or a person acting in cooperation with such an officer, for the purpose of obtaining evidence of the commission of an offense, solicits, encourages or otherwise induces another person to engage in conduct when he was not ready and willing to engage in such conduct.

. . . .

4. The defendant shall have the burden of injecting the issue of entrapment.

■ The statute requires proof of both inducement to engage in unlawful conduct and an absence of a willingness to engage in such conduct. *State v. Willis*, 662 S.W.2d 252, 255 (Mo. banc 1983). It is the defendant's initial burden to go forward with the evidence showing both unlawful governmental inducement and his own lack of predispo-

---

4. Unlike the instant case, however, in *Evans* the court was able to review the tape on appeal.

sition. *Id.* The State then has the burden of proving lack of entrapment beyond a reasonable doubt which it may do by rebutting either defendant's evidence of inducement or by showing his predisposition. *Id.*

■ In the instant case, the State conceded that Officer Robertson and Walker approached Defendant and solicited him to sell cocaine. The issue, therefore, involves the additional necessary element of entrapment, i.e., whether Defendant lacked a predisposition to commit the offenses. Preliminarily, we note that evidence of a defendant's prior use, possession or sale of drugs, or ability to supply drugs on request, is evidence of a predisposition to sell drugs sufficient to negate a defense of entrapment. *State v. Adams,* 839 S.W.2d 740, 743 (Mo. App.W.D.1992).

Defendant admitted that he was an occasional user of drugs. He also told Walker before January 17 that he knew a man at work who had some cocaine, but he contends that he would never have sold drugs to Robertson and Walker except for the fact that they kept bothering him about it. He said that he told Robertson and Walker several times during each transaction that he did not sell drugs, and that they kept "hammering" at him until he relented. His actual testimony was less certain. During the January 17 transaction, he said that he made an inquiry about whether Robertson was a police officer. If anything, this indicated caution on his part rather than a lack of willingness to sell the drugs. He also said that "[e]ventually, they kind of talked me into doing it," and that "I don't know, somehow or another, I guess, you know, they convinced me." He said that he told Walker, "I don't know this lady, or anything like that, and I don't sell drugs, you know." He also said that he told Robertson, "I didn't know where to get any dope, except I had some friends." Defendant admitted that he came up with the price of $300 because he knew that was the street price at the time and that after taking the money he told Robertson he would be back in about thirty minutes. After going to an acquaintance's house to obtain the cocaine, Defendant returned to his home and invited Robertson and Walker to "step into my of-

fice," which was his garage, where the delivery occurred. Also present at his house at that time was another person who Defendant admitted was a cocaine user and seller and who, according to the officer, had also sold her cocaine.

During the January 21 transaction, Defendant said he felt threatened, not by the possibility that Robertson was a police officer, but because she had told him on January 17, when asked what she was going to do with the cocaine, that she had a friend and that they did drugs and also might sell some. He concluded that he might be dealing with a "bad cop" but said, "I don't know, I guess I got talked into it." When he met Robertson and Walker at his house, he smoked some crack cocaine himself.

The State introduced no evidence confirming Defendant's versions of the events as they related to his predisposition to commit the offenses. To the contrary, it contends that Defendant was ready and willing to supply the drugs on request. Officer Robertson testified that during the January 17 transaction, Defendant was only asked once to obtain the cocaine before agreeing to do so. According to Robertson, during the January 21 transaction Defendant questioned whether she was a police officer but agreed, without reluctance, to sell her the cocaine after she denied his inquiry and told him that if he did not want to sell her the drugs she could obtain them elsewhere. She denied making repeated requests or using threats, force, or coercion of any kind on either occasion.

■ Where the State's case contains no evidence of entrapment, that defense is not established as a matter of law. *State v. Willis,* 662 S.W.2d at 257; *State v. Adams,* 839 S.W.2d at 743. Here, the State's case was devoid of evidence that Defendant was other than ready and willing to sell the drugs. Defendant does not contend otherwise about the State's evidence, including the missing tapes. Accordingly, contrary to Defendant's second point, entrapment as a matter of law was not established. The issue was properly for the jury, which was free to disbelieve Defendant's evidence. *See State v.*

*Willis,* 662 S.W.2d at 257; *State v. Adams,* 839 S.W.2d at 743.

Defendant's second point is denied.

### Case No. 19652

■ Defendant also appeals the motion court's denial of his Rule 29.15 motion without an evidentiary hearing. Appellate review of the denial of postconviction relief is limited to a determination of whether the findings and conclusions of the motion court are clearly erroneous. Rule 29.15(j); *State v. Ervin,* 835 S.W.2d 905, 928 (Mo. banc 1992). The findings and conclusions of the motion court are deemed clearly erroneous if this court, after a review of the entire record, is left with a definite and firm impression that a mistake was made. *Id.*

Defendant's sole point relates to the allegation of his *pro se* motion that trial counsel did not call informant Walker as a witness at trial. He contends that his motion pleaded factual allegations which were not refuted by the record and which, if proven, would warrant relief "in that trial counsel failed to call the confidential informant ... Walker as a witness, whose testimony would have supported [his] entrapment defense, which would have led to an acquittal by the jury."

■ In order to prevail on a theory of ineffective assistance of counsel, a movant must show both (1) that his attorney failed to exercise the customary skill and diligence that a reasonably competent attorney would perform under similar circumstances; and (2) that he was prejudiced thereby. *Sanders v. State,* 738 S.W.2d 856, 857 (Mo. banc 1987) (citing *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984)). In order to demonstrate prejudice, a movant must show a reasonable probability that the result would have been different but for the errors of trial counsel (as opposed to showing that the errors had some conceivable effect on the outcome). *Sidebottom v. State,* 781 S.W.2d 791, 796 (Mo. banc 1989).

■ To be entitled to an evidentiary hearing, a movant must (1) allege facts not conclusions which, if true, would warrant relief; (2) the facts must raise matters not refuted by the files and record in the case; and (3) the matters complained of must have resulted in prejudice. *Trehan v. State,* 872 S.W.2d 156, 158 (Mo.App.S.D.1994). Where the alleged deficiency of trial counsel relates to the failure to call a witness, movant, to meet the obligation to allege facts and not conclusions, must allege facts regarding the testimony which, if true, would warrant relief. *State v. Starks,* 856 S.W.2d at 336. If the court determines that the motion, files and records of the case conclusively show that the movant is not entitled to relief, a hearing will not be held. Rule 29.15(g); *State v. Starks,* 856 S.W.2d 334, 336 (Mo. banc 1993).

■ In the instant case, Defendant's 29.15 motion alleged that his trial counsel denied his request to subpoena Walker which "hindered" the court's opportunity "to discover where criminal intent originated, whether in the mind of movant or the mind of informant ... Walker." He also alleged:

> Attorney was not able to cross-examine Walker to investigate the fact that movant was coerced by Walker and the undercover officer to commit the crime. Undercover agent Ginger Robberson [sic] ... answered all comments in regard to Walker's actions inducing "hearsay evidence." Offer [sic] Robberson [sic] admitted she gave movant acholic [sic] drinks and ... Walker fifty dollars to pursuade [sic] and coerced movant to go and buy them drugs to sell.... Walker has sold and used drugs several times with movant prior to dates in question.... Walker took advantage of sentiment aroused by experiences as movants [sic] confidants [sic] in personal tragedy, therefore, officials of government, implant in the mind of an innocent person the disposition to commit an offense and induce its commission in order to prosecute. A line must be drawn between the trap of unwary innocent and unwary criminals.[5]

Defendant did not plead the defense of duress, did not request jury instructions on that defense, and does not argue on this appeal that he is entitled to reversal on that ground.

---

5. We note that Defendant refers to coercion in his motion. To the extent this constitutes an allegation of duress, such defense is separate from the defense of entrapment. See § 562.071.

Of particular significance is the fact that Defendant did not allege in his motion that Walker could have been located through reasonable investigation; would have testified if called; and that he would have given testimony which would have presented a viable defense. These are necessary in order to warrant relief based on counsel's alleged ineffectiveness in failing to call a witness. *State v. Gray*, 849 S.W.2d 115, 119 (Mo.App.E.D. 1993); *Harry v. State*, 800 S.W.2d 111, 115 (Mo.App.E.D.1990). *See also McAlester v. State*, 658 S.W.2d 90, 91–92 (Mo.App.W.D. 1983). In the instant case, the motion court noted these deficiencies in denying the motion without a hearing.

Additionally, we note that by failing to allege what Walker's testimony would have been, Defendant failed to adequately allege the necessary element of prejudice. *State v. Fitzgerald*, 781 S.W.2d 174, 188 (Mo. App.E.D.1989). Even if Defendant's motion could be construed as indicating what Walker's testimony would have been, many of the matters referred to were included in the evidence heard by the jury. The failure to present cumulative evidence is not ineffective assistance of counsel. *State v. Roe*, 845 S.W.2d 601, 605 (Mo.App.E.D.1992); *State v. Fitzgerald*, 781 S.W.2d at 188. Finally, the selection of witnesses is a question of trial strategy, and the mere choice of trial strategy is not a foundation for finding counsel ineffective. *Sanders v. State*, 738 S.W.2d at 858. For the above reasons, we are unable to conclude that the court's denial of Defendant's 29.15 motion was clearly erroneous.

The judgment of the trial court and the order of the motion court are affirmed.

CROW and PARRISH, JJ., concur.